C. WINFIELD PERKINS, APPELLANT, v. TRENTON STREET RAILWAY COMPANY, APPELLEE.

Submitted December 1, 1910—Decided January 6, 1911.

A printed rule of the trolley company required the conductor of a car in case an accident should occur to take the injured person to a physician. The motorman having met with an accident by which his leg was crushed, the conductor telephoned to the plaintiff, a physician, who came and amputated the limb. *Held*, that the company was liable on contract to the physician for the value of the service thus rendered.

---

On appeal from the District Court of Trenton.

This action was brought by Doctor Perkins against the Trenton Street Railway Company to recover for services rendered for the company to Charles Brown, a motorman in the employ of the company, at the request of the conductor.

The motorman and conductor, respectively, left Trenton with a car of the company for Princeton. At or near Stony Brook, a flock of guinea hens ran across the track, and the motorman, with one hand on the air-brake lever, leaned out of the car to observe if any of the fowls had got in the running gear of the car, when he was knocked off the car, and the wheels of the car, passing over his left leg, crushed it between the knee and thigh. The conductor ran the car as fast as he could to Princeton where he telephoned for a physician, and shortly afterwards Doctor Perkins arrived and administered to the injured man, tourniqueting the wounded leg and applying restoratives. The car was run as fast as possible to McKinley Hospital, Trenton, as Doctor Perkins considered it necessary to get the man there to amputate his leg as quickly as possible. Doctor Perkins amputated the leg as soon as he arrived at the hospital.

The conductor testified that he was the highest one in authority at the scene of the accident, and in Princeton at the time he requested Doctor Perkins to attend to the motorman.

Doctor Perkins testified that the condition of the man was such from shock and loss of blood that it was absolutely necessary to operate to save the man's life.

Doctor Fell, after being qualified as an expert, testified that from the condition of the man, as testified to, he would say that it was necessary to amputate to save the man's life.

A book of instructions, issued by the Trenton Street Railway Company to its motormen and conductors when they were first employed by them, entitled "Instructions as to the Handling of the Electric Cars," was offered in evidence to show the agency of the conductor, which book was placed in evidence after objection of counsel for the railway company. The clauses in book of instructions referred to read as follows:

"5. The conductor will have full charge of the car while on duty, and such orders that he may give, not conflicting with the rules, are to be obeyed.

"6. In case an accident should occur, the car must be stopped immediately, and the conductor ascertain the name and residence of injured person, render all possible assistance, and, if necessary, take the injured person to a nearby drug store or physician. In case an accident is serious, telephone immediately to the main office of the company; ascertain the name and residence of all persons who witnessed the accident, which is of the utmost importance." * * *

The conductor testified that he requested Doctor Perkins to attend the wounded man and telephoned the main office of the company in Trenton.

Counsel for the defendant asked for judgment in favor of defendant upon the grounds that there was not shown any legal liability upon the part of the defendant, also that the motorman, by his own carelessness, caused the injury he received.

Judgment for defendant of no cause of action.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the appellant, *John V. B. Wicoff.*

For the appellee, *George W. Macpherson.*

The opinion of the court was delivered by

GARRISON, J.   The District Court, in an opinion filed in the cause, places its decision solely upon the ground that the emergency did not constitute the conductor the agent of the company.   The soundness of this conclusion need not be examined since it entirely ignores the printed "instructions" issued by the company touching the duties of the conductor in case an accident should occur.   In such a case the conductor, in addition to rendering all the assistance it is possible for him to render is required, when the necessity for it exists, to take the injured person to a physician.   This is meaningless unless it means that the physician is to render the professional aid immediately necessitated by the accident. We think that this is its meaning, and that services of such a character when so rendered are rendered to the company through its duly-authorized agent.   The authority to take the injured person to the physician, of course, carries the authority to call the physician to the injured person.   Thus far there is no difficulty.

The District Court, however, in its opinion, finds not only that there was no sufficient emergency (a matter we need not now consider), but also that the injured motorman was himself guilty of negligence.   Assuming that this means that his negligence was such as to bar his right of recovery against the company, the question arises whether the authority of the conductor under the printed instructions extends to cases of accidents for which the company is not liable.   The instruction makes no such distinction, and upon reflection, we think that no such distinction can be made in view of the ground upon which the instruction itself must be supported as a reasonable and valid exercise of corporate regulation.   The directors of the company will be presumed to have framed and promulgated this instruction in the interest of the stockholders. From this point of view they may well have considered that for every injury resulting from an accident in their cars a law suit is possible, in the course of which their liability would

for the first time be authoritatively determined. If liable they may be deemed, from their knowledge of human nature, to know that the damages assessed by the jury would, as a rule, be largely enhanced by any show of inhumanity toward the plaintiff at the time of his injury or any lack of immediate care for him at that critical juncture, and also that humane aid promptly secured by the company would be a circumstance likely to affect the jury favorably. The directors also knew, unless blind to the details of their business, that it is of the utmost importance in litigated accident cases that the medical witness, who first sees and ministers to the injured person, shall not be one selected and paid (or to be paid after the suit) by such person, and still more that such witness shall not be selected by the attorney who prosecutes the suit for damages. A rule that would in all cases tend to secure unbiased testimony upon this important feature of every such litigation would be an exercise of sound discretion by the directors. This answers the objection that it is no part of the directors' duty to provide medical attendance for persons for whose injuries the company is not liable. For such liability cannot be determined at the instant of the accident, and that is the instant at which the conductor is required to act. So, that in view of the reason suggested for such rule, it would be a sound exercise of discretion for the directors to incur the slight expense in those cases in which it was ultimately determined that the company was not liable in view of the far greater importance of the results flowing from such rule in cases where the question of damages was involved. For the same reason and to the same end the rule should not be interpreted or rather frustrated by making the conductor pass as judge and jury upon the law and facts of an accident at the instant of its occurrence as the basis of his private judgment as to whether or not it came within the rule that prescribed his duties in case of an accident.

Regarding the case therefore as one in which the injured person was guilty of contributory negligence, we think that that circumstance affects neither the interpretation of the company's rule nor its legal effect upon the agency of the con-

ductor. We may say, however, in conclusion, that the existence of contributory negligence, if determined by the court as a judge, was not justified by legal rules, and if found by the court as a jury was not supported by any testimony.

The sole circumstance upon which in either case such finding could rest, is that the motorman had leaned beyond the outer wall of the car in order to see whether a flock of guinea hens had got into the running gear of the car. To make observations as to occurrences of this sort that might delay travel and even endanger the safety of passengers, was strictly within the line of the motorman's duty, and there is not a scintilla of testimony in the state of the case to suggest that such duty could have been performed in any other way than as this servant performed it, or that he performed 'it in a negligent manner. Had he failed to look back, and in consequence of such failure been injured by the fowls becoming engaged in the running gear, such failure would, with much more show of reason, have been ascribed to him as a failure to perform his duty. It cannot be that he was equally negligent whether he looked or failed to look, and of the two we think that his failure to look would, if one or the other must be negligence, have been the negligent act.

The judgment of the District Court of the city of Trenton is reversed and a *venire de novo* awarded.